UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

MENASHA SANDERS,

    Plaintiff,

v.   Case No. 2:20-cv-788-NPM

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**OPINION AND ORDER**

Plaintiff Menasha Sanders seeks judicial review of a denial of Social Security disability benefits. The Commissioner of the Social Security Administration filed the transcript of the proceedings (Doc. 19), [1] and the parties filed a joint memorandum (Doc. 25). As discussed in this opinion and order, the decision of the Commissioner is affirmed.

**I.    Eligibility for Disability Benefits and the Administration's Decision**

    **A.    Eligibility**

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like walking or lifting, nonexertional abilities like seeing or hearing, tolerances for workplace conditions like noise or fumes, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude both a return to past work and doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

**B.    Factual and procedural history**

On February 26, 2019, Sanders applied for supplemental security income. (Tr. 63, 76, 145). She asserted an onset date of January 1, 2018, alleging disability due to the following: mental health conditions; bipolar; attention deficit hyperactivity disorder (ADHD); depression; schizophrenia; and anemia. (Tr. 51-52, 64-65). Sanders later amended the onset date to February 26, 2019. (Tr. 15, 34). As of the

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1513(a)(2)(i)-(iv) (discussing the various categories of work-related abilities), 416.913(a)(2)(i)(A)-(D) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same), 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by an impairment), 416.945(b)-(d) (same), 404.1594(b)(4) (defining functional capacity to do basic work activities), 416.994(b)(1)(iv) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

amended alleged onset date, Sanders was 27 years old, and she had a high school education. (Tr. 34, 51, 64). Sanders previously worked as a customer service representative and a waitress. (Tr. 166).[5]

On behalf of the administration, a state agency[6] reviewed and denied Sanders's application initially on April 10, 2019, and upon reconsideration on May 28, 2019. (Tr. 63, 76). At Sanders's request, Administrative Law Judge ("ALJ") Charles J. Arnold held a hearing on December 2, 2018. (Tr. 29-50, 93). On May 1, 2020, the ALJ issued an unfavorable decision finding Sanders not disabled since February 26, 2019. (Tr. 12-24).

Sanders's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Sanders then brought the matter to this court, and the case is ripe for judicial review. The parties consented to proceed before a United States Magistrate Judge for all proceedings. (*See* Doc. 21).

C.  **The ALJ's decision**

The ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. § 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of

---

[5] Due to the extremely short periods of time Sanders held past jobs, the vocational expert testified none of Sanders's past work reached the level of relevancy. So the vocational expert testified Sanders has no past relevant work. (Tr. 45).

[6] In Florida, a federally funded state agency develops evidence and makes the initial determination whether a claimant is disabled. *See* 42 U.S.C. § 421(a); 20 C.F.R. § 416.903(a).

impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. § 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. § 416.1400. Unlike judicial proceedings, Social Security Administration hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id.* Indeed, "at the hearing stage, the commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id.* (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id.* (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can

perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *See* 20 C.F.R. § 416.912 (providing that the claimant must prove disability); *see also Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."). In short, the "overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant." *Washington*, 906 F.3d at 1359 (quoting *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001)).

At step one of the evaluation, the ALJ found Sanders had not engaged in substantial gainful activity since February 26, 2019, the date Sanders filed her application. (Tr. 17). At step two, the ALJ characterized Sanders's severe impairments as bipolar disorder, anxiety disorder, and psychosis. (Tr. 17). At step three, the ALJ determined Sanders did not have an impairment or combination of impairments that met or medically equaled the severity of an agency-listed impairment. (Tr. 17).

As a predicate to step four, the ALJ arrived at the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: only low stress work defined as no high production demands; only simple, routine, repetitive tasks with simple type instructions; jobs with a reasoning level of 1-3; no interaction with the public; and only occasional contact with others at the worksite.

(Tr. 19). But because Sanders did not have any past relevant work, there was no occasion for the ALJ to make a step-four finding. (Tr. 22). At step five, the ALJ found Sanders could perform other work that exists in significant numbers in the national economy. In support, a vocational expert opined during the ALJ hearing that three occupations represent the kinds of jobs that an individual with Sanders's age, education, work experience, and RFC could perform:

- *General Laborer* (DOT# 909.687-014); heavy; SVP 2; with 150,000 positions in the national economy;

- *Hand Packager* (DOT# 920.587-018); medium; SVP 2; with 60,000 positions in the national economy;

- *Electronics Worker* (DOT# 726.687-010); light; SVP 2; with 70,000 positions in the national economy.

(Tr. 23).[7] Consequently, the ALJ concluded Sanders was not under a disability from February 26, 2019, through the date of the decision, May 1, 2020. (Tr. 23-24).

---

[7] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

## II.   Analysis

The issue on appeal is whether the ALJ was required to mirror persuasive opinions as expressed in a form questionnaire, along with the form's associated definitions, when formulating the RFC. (Doc. 25, pp. 11).

### A.   Standard of review

The court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. In other words, a "presumption of validity attaches" to the ALJ's factual findings. *Walker v. Bowen*,

826 F.2d 996, 999 (11th Cir. 1987). And if supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B. Whether the ALJ was required to mirror persuasive opinions as expressed in a form questionnaire with associated definitions when formulating the RFC.**

Sanders argues the ALJ impermissibly substituted his lay opinion for that of a medical professional when he found a treating nurse to be generally persuasive but did not incorporate a mirror image of the nurse's opinions into the RFC. (Doc. 25, pp. 12-14).

Following an involuntary hospitalization in 2018 due to threats of suicide, Sanders began a course of mental-health treatment with Jeanne Jagodzinski, ARNP-P.[8] (Tr. 246, 257). After the state-agency denial of Sanders's disability application and before her ALJ hearing—and while Sanders was hospitalized for mental-health complications associated, at least in part, with the then-recent death of her cousins and boyfriend—nurse Jagodzinski completed a November 1, 2019 mental RFC

---

[8] While the record is unclear as to Jagodzinski's qualifications—aside from her signature line bearing a reference to ARNP-P—she is a medical source. *See* 20 C.F.R. § 416.902(i). She also appears to be a board certified psychiatric mental health nurse practitioner (PMHNP-BC), which makes her an "acceptable medical source." *See* 20 C.F.R. § 416.902(a)(7).

- 8 -

questionnaire about Sanders's mental-health impairments using a five-point scale. (Tr. 876-879). With respect to this questionnaire, the ALJ reasoned:

> A mental residual functional capacity assessment was completed by Jeanna [sic] Jagodzenski [sic], APRN on November 1, 2019. It was opined that the claimant has moderate work related limitations in almost all functional areas. However, it was opined that the claimant has a marked limitation in responding appropriately to changes in a work setting (Exhibit 11F). The undersigned finds these opinions persuasive, as they are supported by the mental health treatment records and are consistent with the mental status evaluations of record. Additionally, the sources had the opportunity to treat the claimant over a period of time.

(Tr. 22).

Notably, while the questionnaire utilized by Jagodzinski employs the same terms for its five-point scale—such as "moderate" and "marked"—as those used by the administration's regulations for assessing whether various mental-health conditions are disabling, there is little to no similarity between the questionnaire and the regulations in the way these terms are defined.

The regulatory regime speaks in terms of overall severity, and the five rating points of none, mild, moderate, marked, and extreme are defined as:

> a. No limitation (or none). You are **able** to function in this area independently, appropriately, effectively, and **on a sustained basis**.
> b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is **slightly limited**.
> c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is **fair**.
> d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is **seriously limited**.

e. Extreme limitation. You are ***not able*** to function in this area independently, appropriately, effectively, and ***on a sustained basis***.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 12.00, F.2 (emphasis added).[9]

Taking a very different tack, the questionnaire speaks in terms of the frequency with which a total loss of function would occur and defines the same five rating points as:

| | | |
|---|---|---|
| None | = | No limitations. |
| Mild | = | Unable to function in this area less than **10% of the work day** [sic] work week. |
| Moderate | = | Unable to function in this area from **11% to 25% of the work day** or week. |
| Marked | = | Unable to function in this area from **26% to 50% of the work day** or work week. |
| Extreme | = | Unable to function in this area **over 50% of the work day** or work week. |

(Tr. 876 (emphasis added)).

The overall thrust of Sanders's argument is that because the ALJ was persuaded by Jagodzinski's opinions about moderate and marked mental-health limitations, he was required to adopt the questionnaire's definitions for "moderate" and "marked" as well. Why does Sanders press this point? Because using the questionnaire's definitions means anything more than a mild limitation is entirely disabling (even though the regulations contemplate that a moderate limitation is not seriously limiting). (*See, e.g.*, Tr. 47 (vocational expert testifying that "moderate" limitations—as "moderate" is defined in the questionnaire—would preclude

---

[9] The regulations for supplemental security income incorporate the listing of impairments in appendix 1 of subpart P of part 404. *See* 20 C.F.R. § 416.901(f)(1).

employment)).

But finding an opinion persuasive does not mean it is controlling. 20 C.F.R. § 416.920c(a) ("We will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from your medical sources."). And the regulations do not require ALJs to adopt into an RFC every part of an opinion that they otherwise find persuasive. *See* 20 C.F.R. § 416.920c(a); *see also Freyhagen v. Comm'r of Soc. Sec.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, *8 (M.D. Fla. Sept. 26, 2019).

Rather, the assessment of a claimant's RFC is within the exclusive province of the ALJ. *See* 20 C.F.R. § 416.946(c); *accord Beegle v. Soc. Sec. Admin., Comm'r*, 482 F. App'x 483, 486 (11th Cir. 2012) ("A claimant's [RFC] is a matter reserved for the ALJ's determination, and while a physician's opinion on the matter will be considered, it is not dispositive"). So an ALJ does not impermissibly assume the role of a doctor by viewing the record evidence as a whole and making an RFC determination. *See Castle v. Colvin*, 557 F. App'x 849, 853 (11th Cir. 2014) ("[T]he ALJ did not 'play doctor' in assessing Mr. Castle's RFC, but instead properly carried out his regulatory role as an adjudicator responsible for assessing Mr. Castle's RFC.").

Indeed, the applicable regulations contemplate that the same terms don't always mean the same thing, and so an ALJ may arrive at a degree of limitation

different from that of a claimant's physician. As the regulations explain:

> We use all of the relevant medical and non-medical evidence in your case record to evaluate your mental disorder: The symptoms and signs of your disorder, the reported limitations in your activities, and any help and support you receive that is necessary for you to function. The medical evidence may include descriptors regarding the diagnostic stage or level of your disorder, such as "mild" or "moderate." Clinicians may use these terms to characterize your medical condition. However, these terms will not always be the same as the degree of your limitation in [an] area of mental functioning.

20 C.F.R. Pt. 404, Subpt. P, App. 1, Pt. A, 12.00, F.3.a.

Thus, it would be inappropriate to hold that the mental RFC questionnaire requires a more restrictive RFC than the one arrived at by the ALJ. *See I.N.S. v. Elias-Zacarias*, 502 U.S. 478, 481 n.1 (1992) (to override an agency's factual finding, a reviewing court "must find that the evidence not only supports [a contrary] conclusion, but compels it.").

What's more, Jagodzinski acknowledged that at least some of her opinions would change if she were assessing Sanders's limitations in the context of a job that required "only minimal contact or interaction with others." (Tr. 877). As Jagodzinski explained in the questionnaire, Sanders "has increased frustration anxiety [and] mood instability with increased stress/stimuli." *Id*. And the ALJ's highly restrictive RFC correspondingly limited Sanders to "only low stress work" with "no interaction with the public; and only occasional contact with others at the worksite." (Tr. 19). Thus, Jagodzinski's answers to the mental RFC questionnaire supply substantial evidence in support of the ALJ's RFC. *See Sims v. Comm'r of Soc. Sec.*, 706 F.

App'x 595, 604 (11th Cir. 2017) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion").

### III. Conclusion

Upon consideration of the submissions of the parties and the administrative record, the court finds substantial evidence supports the ALJ's decision and there was either no error or no harmful error in the ALJ's application of the correct legal standard.

Accordingly, the decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The **CLERK OF COURT** is directed to enter judgment, terminate any pending motions and deadlines, and close the case.

**ORDERED** on March 31, 2022.

_____
NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE